IN THE UNITED STATES DISTICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| LOWER BRULE SIOUX TRIBE,<br>A federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>HON. DEB HAALAND, Secretary, United States Department of the Interior, or her successor in office; the UNITED STATES DEPARTMENT OF INTERIOR; BRYAN NEWLAND, Acting Assistant Secretary of the Interior for Indian Affairs, or his successor in office; DARRYL LACOUNTE, Director of the Bureau of Indian Affairs; THE UNITED STATES BUREAU OF INDIAN AFFAIRS; KRISSANNE STEVENS, or her successor, Awarding Official for the Bureau of Indian Affairs Great Plains Region the UNITED STATES DEPARTMENT OF THE TREASURY, BUREAU OF THE FISCAL SERVICE; TIMOTHY GRIBBEN, Commissioner of the Bureau of Fiscal Service, or his successor in office, and THE UNITED STATES OF AMERICA.<br><br>Defendants. | 21-cv-3018<br><br>COMPLAINT AND PETITION FOR PRELIMINARY AND PERMANENT INJUNCTION, DECLARATORY RELIEF, AND WRIT OF MANDAMUS |

Plaintiff for its Complaint and Petition against the above-named Defendants, states and alleges as follows:

## NATURE OF THE ACTION

1.  Plaintiff Lower Brule Sioux Tribe (hereinafter "the Tribe") is an Indian Tribe operating in part under grants from, or contracts with, the United States Bureau of Indian Affairs (hereinafter "the BIA") under the Indian Self-Determination and Education Assistance Act

of 1975 (Public Law 93-638, as amended) and the United States Bureau of Indian Education (hereinafter "the BIE") under the Tribally Controlled Schools Act of 1988 (Public Law100-297, as amended). The Tribe seeks a permanent injunction pursuant to Fed. R. Civ. P. 65, and Declaratory Relief pursuant to 28 U.S.C. § 2201 *et. seq.*, enjoining and prohibiting Defendants, collectively and individually, from any further collection, diversion, or seizure of Bureau of Indian Affairs (BIA) funding due to the Tribe pursuant to the Tribe's self-determination contracts under the Indian Self-Determination Act, or any other federal grants, funding, or payment; and for restoration of all funds already collected, seized, or diverted. Plaintiff also petitions for a preliminary injunction or, in the alternative, a temporary restraining order, enjoining and prohibiting Defendants from any further collection, diversion, or seizure of such BIA or other federal funding, grants, or payments. In short, the Tribe asks the Court to halt the  United States Department of the Treasury, Bureau of the Fiscal Service's (hereinafter "USDOT-BFS") seizure of federal money, which was initiated at the direction of the Tribe's cognizant oversight agency for audit [United States Department of the Interior, BIA (Great Plains Region) - hereinafter "the BIA (GPR)"] - to satisfy an alleged federal debt that is disputed by the Tribe, and restore federal money unlawfully seized.

2. Defendants have instituted a collection action against the Tribe, alleging that the Tribe misapplied federal funds received pursuant to the Tribe's self-determination contracts, its Tribally Controlled School Grants.

3. The Tribe asserts that it reasonably relied upon the practice, custom, policies, and conduct of Defendants in its use of said funding and that Defendant's collection action has caused, and will continue to cause, irreparable harm and hardship to the Tribe and its members.

2

4. The Tribe further asserts that the BIA (GPR), as the Tribe's cognizant oversight agency for audit pursuant to 2 CFR §200.18, failed to fulfill its obligation to the Tribe to offer technical and other assistance that would have prevented the collection of federal funding to which the Tribe is otherwise entitled as required by 2 CFR §200.513.

5. The Defendants have a duty to liberally construe provisions of federal law and regulation to benefit the Tribe and its members, and a trust responsibility to act in the best interests of the Tribe and its members.

## PARTIES

6. Plaintiff Lower Brule Sioux Tribe is a federally recognized Indian Tribe. Its principal headquarters are in Lower Brule, South Dakota, Lower Brule Sioux Indian Reservation. The Tribe is responsible for the health, safety, and welfare of its individual tribal members. The Tribe is also the ultimate contractor with the Defendants under the Indian Self-Determination and Education Assistance Act of 1975, as amended, and the sole grantee relative to the Defendents under the Tribally Controlled Schools Act of 1988, as amended (Pub.L. 93-638 and Pub.L. 100-297, 25 U.S.C. § 450 et seq.) to provide various services to its tribal members. The Tribe brings this action on its own behalf and on behalf of all its members.

7. Defendant Deb Haaland, or her successor in office, is sued in her official capacity as Secretary of the United States Department of the Interior, an executive department of the United States Government.

8. Defendant United States Department of the Interior (hereinafter ("DOI") is an executive department of the United States Government organized and existing under 5 U.S.C. § 101, as amended. Defendant DOI is responsible for, among other things, the supervision,

3

management, direction, and oversight of the Defendant Bureau of Indian Affairs and the Bureau of Indian Education, which are federal agencies within the DOI, pursuant to the provisions of 25 U.S.C. § 1 et seq.

9.  Defendant Bryan Newland, or his successor, is sued in his capacity as the Principal Deputy Assistant Secretary of the Interior for Indian Affairs (hereinafter "AS-IA") and is the most senior government official overseeing both the Bureau of Indian Affairs and the Bureau of Indian Education.

10. Defendant Darryl LaCounte, or his successor, is sued in his capacity as the Director of the Bureau of Indian Affairs.

11. Defendant Krissanne Stevens, or her successor, is sued in her capacity as the Awarding Official for the Bureau of Indian Affairs Great Plains Region.

12. Defendant Bureau of Indian Affairs (hereinafter "BIA") is responsible for fulfilling the United States' trust responsibility to American Indian people, including maintaining the federal government-to-government relationship with federally recognized Indian tribes, and promoting and supporting tribal self-determination.   This duty includes the administration of self-determination contracts under the Indian Self-Determination and Education Assistance Act and the distribution of contract funds to the Tribe, pursuant to federal law, regulation, and policy.   The Great Plains Regional office of the BIA also currently serves as the Tribe's cognizant oversight agency for audit, and served as the Tribe's cognizant oversight agency for audit at all relevant times hereto.

13. Defendant United States Department of Treasury, Bureau of the Fiscal Service (USDOT-BFS), is the entity tasked with the collection action that has resulted in the seizure and diversion of funds that were to be used by the Tribe for the benefit of its members. The

USDOT-BFS operates a Treasury Offset Program (hereinafter "TOP"), which collects delinquent debts that persons and entities owe to federal agencies by withholding ("offsetting") funds that were to be paid to that person or entity by a federal agency.

14. Defendant Timothy Gribben, or his successor, is sued in his capacity as the Commissioner of Defendant Bureau of the Fiscal Service.

## JURISDICTION AND VENUE

15. This Court has jurisdiction under 28 U.S.C. § 1331 and 25 U.S.C. § 450m-1; under the Indian Self-Determination and Education Act, at 28 U.S.C. § 5331(a); pursuant to a request for relief through a Writ of Mandamus under 28 U.S.C. § 1361; 28 U.S.C. § 1362; 28 U.S.C. §1346; a request for declaratory relief pursuant to 28 U.S.C. § 2201 et seq.; and a request for injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

16. The United States has waived its immunity from suit under Section 702 of the Administrative Procedures Act ("APA"), 5 U.S.C. § 702.

17. Venue lies in this Court under 28 U.S.C. § 1391 (b)(2) and (e)(1).

18. This action arises under Article 1, Section 8, Clause 3 of the United States Constitution; Article VI, Section 2 of the United States Constitution; the Fifth Amendment to the United States Constitution; the Treaty of Fort Laramie of 1868, Articles V, VII and Article IX, 15 Stat. 635; the Snyder Act of 1921, as amended, at 25 U.S.C. § 13 (Act of Nov. 2, 1921, Stat. 208, as amended); Chapter 22 and Chapter 46 of Title 25 of the United States Code; the Indian Self-Determination Act and Education Assistance Act of 1975, as amended (25 U.S.C. § 5301 et. seq.); the Tribally Controlled Schools Act of 1988, as amended (25 U.S.C. § 2501 et. seq.); the 1934 Indian Reorganization Act and subsequent amendments; the Administrative Procedure Act (5 U.S.C. § 702); the special trust relationship between

the Federal government and the Indians; the plenary power of Congress; violation of and all other applicable constitutional provisions, federal law, regulation and policy.

**FACTS**

19. All federal funding received by the Lower Brule Sioux Tribe bears a unique 5-digit Catalog of Federal Domestic Assistance (hereinafter "CFDA") Number, XX.XXX, where the first two digits represent the Funding Agency, and the last three digits represent the CFDA program, which can be a project, service, or activity. CFDA Numbers provide the Tribe with the objective(s), allowable use(s), and compliance requirement(s) relative to the Assistance received. Alternately, this CFDA number is known as an Assistance Listing Number (hereinafter, "ALN").

20. Pursuant to Public Law 93-638, the Indian Self-Determination and Education Assistance Act, as amended (hereinafter "ISDEAA") (25 U.S.C. § 5301 *et. seq.*), the Lower Brule Sioux Tribe receives federal funding enabling it to assume direct control over programs previously controlled by the federal government, for the benefit of the Tribe and its members. Often, these funds are advanced funds, so called because they are paid to the Tribe in advance of the intended expenditures being incurred.

21. Pursuant to Public Law 100-297, the Tribally Controlled Schools Act of 1988, as amended (hereinafter "TCSA") (25 U.S.C. § 2501 *et. seq.*), the Lower Brule Sioux Tribe receives federal funding enabling it to assume direct control over school programs previously controlled by the federal government, for the benefit of the Tribe and its members. Often, these funds are advanced funds, so called because they are paid to the Tribe in advance of the expenditures being incurred for which they are intended.

22. The Tribe records by CFDA Number such advanced funds as deferred revenue, and therefore a liability on its balance sheet because it reflects revenue that has not been earned and represents services that are owed to the federal government under a contract or grant.  As services are provided, or carried out over time, it is recognized proportionally as revenue on the Tribe's income statement.

23. Pursuant to the Single Audit Act of 1984, and consistent with the ISDEAA, the Tribe conducts an annual audit. The Tribe's auditors report their audit findings in the Schedule of Findings and detail questioned costs attached to these findings by CFDA Number in the Schedule of Questioned Costs.  The Tribe prepares a Corrective Action Plan (CAP) to respond to the auditors' findings and to address questioned costs. The Tribe then submits the audit, with its CAP included, to the Federal Audit Clearinghouse (FAC) and to the Department of Interior, Division of Internal Evaluation and Assessment (DIEA) - the audit liaison/point of contact for all Indian Affairs organizations to the Department of the Interior, including the Bureau of Indian Affairs (Great Plains Region), the regional office of the Tribe's cognizant oversight agency for audit (2 CFR §200.18, Defined; 2 CFR §200.513, Responsibilities).

24. The Tribe's cognizant oversight agency for audit, in this case, the BIA (GPR), has a duty to provide technical assistance to the Tribe; and a duty to endeavor to resolve costs questioned by the Tribe's auditors to avoid having to disallow the costs.  The federal awarding official for the cognizant oversight agency for audit has a 365-day time frame in which to resolve questioned costs. If the federal awarding official for the cognizant oversight agency for audit does not act in time, it forfeits its ability to recoup disallowed costs.  25 U.S.C. §450j-1(f); *see also* DOI-BIA Single Audit Handbook 5 IAM 2-H.

25. In the case of a questioned cost, the federal awarding official for the Tribe's cognizant oversight agency for audit may: (a) sustain the questioned cost by disallowing the questioned cost; or (b) reinstate the questioned cost and deem the cost to be allowable.

26. If a questioned cost is disallowed, the federal awarding official for the Tribe's cognizant oversight agency for audit has a duty to issue a Findings & Determinations memorandum (hereinafter "F&D") to disallow the cost; and issue a formal notice to the Tribe, by a certified letter.  The formal notice must advise the Tribe of its right to an appeal under 25 CFR §2, 25 CFR §900, and 43 CFR §4, with a right to a hearing on the record, and a right to full discovery, and a right to cross-examine witnesses. *See also* 25 U.S.C. §5331(a).

27. In the event of a dispute between the Tribe and the federal awarding official for the Tribe's cognizant oversight agency for audit, the Tribe has the right to seek resolution of the dispute via alternative dispute resolution, such as arbitration or third-party mediation. 25 U.S.C. § 5329.

28. In a case of suspected misapplication of federal funds or deferred revenues that are not fully collateralized, the federal awarding official for the Tribe's cognizant oversight agency for audit is required to perform an analysis of the Tribe's financial statements to ascertain whether federal funds have been misapplied or deferred revenues are not fully collateralized.  If it is determined that funds have been misapplied or deferred revenues are not fully collateralized, the federal awarding official for the Tribe's cognizant oversight agency for audit will document the misapplication of funds or lack of full collateralization of deferred revenues by issuing a F&D memorandum to initiate either 1) a recovery of misapplied funds, or 2) the placement of the Tribe on no less than quarterly

allowances until a subsequent financial statement audit shows that all discrepancies have been corrected. 25 U.S.C. § 450e-3.

29. The federal awarding official bears the burden of proving that costs should be disallowed, and the agency disallowing costs has a legal obligation to assist the Tribe in resolving any issues.

30. The federal awarding official for the Tribe's cognizant oversight agency for audit responsible for the duties described in the preceding paragraphs with respect to the Tribe's audits for FY2012 and from FY2016 to FY2019 was Defendant Krissanne Stevens of the BIA (GPR). Ms. Yvonne LaRocque of the BIA (GPR) served as the federal awarding official for the Tribe's cognizant oversight agency for audit from FY2013 to FY2015.

31. The Tribe's Single Audit Report for the Fiscal Year Ended September 30, 2012 (hereinafter "2012 Audit") resulted in Ms. Stevens of the BIA (GPR), questioning costs on the grounds that the Tribe had used deferred revenue in the form of advanced federal funds to pay operating expenditures, even though no questioned costs were attached to this Material Weakness Finding by the Tribe's auditors. Nevertheless, the Tribe responded, providing financial statements establishing that the liability by that deferred revenue was more than offset by the value of "Tribal equity, net unrestricted assets, and amounts in capital assets that are sufficient to cover the deferred revenue deficit." The federal awarding official accepted the Tribe's response and reinstated the costs she had previously questioned, declining to issue a bill of collection.

32. The Tribe's Single Audit Report for the Fiscal Year Ended September 30, 2013 (hereinafter "2013 Audit") resulted in Ms. LaRocque of the BIA (GPR) questioning costs

on the grounds that the Tribe had used deferred revenue in the form of advanced federal funds to pay operating expenditures, even though no questioned costs were attached to this Material Weakness Finding by the Tribe's auditors. Nevertheless, the Tribe responded, providing financial statements establishing that the liability by that deferred revenue was more than offset by the value of the Tribe's capital assets. The federal awarding official accepted the Tribe's response and reinstated the previously questioned costs, noting that "the BIA cannot make a determination on the deferred revenue for other agencies." While Ms. LaRocque stated she was sustaining the costs she had chosen to question for BIA programs, she declined to issue a bill for collection.

33. The Tribe's Single Audit Report for the Fiscal Year Ended September 30, 2014 (hereinafter "2014 Audit") resulted in Ms. LaRocque of the BIA (GPR),  questioning costs on the grounds that the Tribe had used deferred revenue in the form of advanced federal funds to pay operating expenditures, even though no questioned costs were attached to this Material Weakness Finding by the Tribe's auditors. Nevertheless, the Tribe responded, providing financial statements establishing that the liability by that deferred revenue was more than offset by the value of the Tribe's capital assets. The federal awarding official accepted the Tribe's response and reinstated the previously questioned costs, declining to issue a bill for collection.

34. The Tribe's Single Audit Report for the Fiscal Year Ended September 30, 2015 (hereinafter "2015 Audit") resulted in Ms. LaRocque of the BIA (GPR), questioning costs on the grounds that the Tribe had used deferred revenue in the form of advanced federal funds to pay operating expenditures, even though no questioned costs were attached to this Material Weakness Finding by the Tribe's auditors. Nevertheless, the

Tribe responded, providing financial statements establishing that the liability by that deferred revenue was more than offset the value of the Tribe's capital assets. The federal awarding official accepted the Tribe's response and reinstated the previously questioned costs, declining to issue a bill of collection.

35. On November 9, 2017, Michael J. Chatmon of the DIEA sent a memorandum to Ms. Danelle Daughterty of the BIA (GPR), the Acting Regional Director at that time for the Tribe's cognizant oversight agency for audit, that Ms. LaRoque's acceptance on behalf of the BIA (GPR) of the Tribe's defense that its deferred revenue shortfall relative to the 2015 Audit was offset by the value of the Tribe's capital assets was "unsound". Mr. Chatmon stated that "IA advanced funds (deferred revenue) must be maintained in cash and /or short term investments and must be readily available for program expenses. IA advanced funds (deferred revenue) cannot be covered by a capital asset that must be sold in order to generate cash needed to sustain an IA program".

36. Mr. Chatmon's memorandum to Ms. Daughterty was not shared with the Tribe until April 2021. Had the Tribe known of Mr. Chatmon's narrow interpretation of the guidance provided at 25 USC § 450e-3, which states that advance payments made by the Department of the Interior to Indian tribes may be invested by the Indian tribe before such funds are expended for the purposes of the grant so long as such funds are "fully collateralized to ensure protection of the funds," it would have defended its position and opposed Mr. Chatmon's interpretation.

37. In relaying this internal communiqué to the Tribe via email on April 14, 2021 (months after initiation of this Collection Action), Ms. Steven of the BIA (GPR) stated that Mr.

Chatmon's memo to the BIA "really put BIA in a bind for accepting the Tribe's previous responses" relative to deferred revenue shortfalls.

38. The Tribe's Single Audit Report for the Fiscal Year Ended September 30, 2016 (hereinafter "2016 Audit") resulted in Ms. Stevens of the BIA (GPR),questioning costs on the grounds that the Tribe had used deferred revenue in the form of advanced federal funds to pay operating expenditures, even though the Tribe's auditors stated that the implications of this Material Noncompliance and Material Weakness Finding were unknown. The Tribe submitted its Corrective Action Plan (CAP), but the federal awarding official still chose to make the determination that the Tribe "misapplied $6,122,556 in questioned costs" and sustained the finding, directing that a bill of collection be issued, which would require the Tribe to reimburse the BIA (GPR) the amount of the questioned costs, even though nearly fifty-nine percent (59%) of the amount questioned by the BIA's federal awarding official had not been issued by the BIA.  The Tribe subsequently provided additional information in response to the federal awarding official's F&D memorandum.

39. Approximately two weeks later, Ms. Krissanne Stevens of the BIA (GPR) - the Tribe's cognizant oversight agency for audit that year, issued a Request for Suspended Action Memorandum, asking the Interior Business Center for the DOI to "temporarily suspend collection efforts related to Bill for Collection #SC2016-5499 in the sum of $6,122,556" as she and others would need to review the additional information provided by the Tribe before revising the F&D memorandum.

40. The Tribe has no record of a revised F&D memorandum or a revised Bill for Collection ever being issued for the 2016 Audit, and Defendants have been unable to produce copies of a revised F&D memorandum or a revised Bill for Collection for the 2016 Audit.

41. Furthermore, Defendants have been unable to produce documentary evidence that these items were ever sent via certified mail, or subsequently received by the Tribe, which process is required of BIA's Awarding Officials (AO's), as per item 3(b) on page three of the Single Audit Handbook 5IAM-2H issued by the Department of the Interior, Bureau of Indian Affairs.  As such, there is no documented record of any remaining questioned costs for the 2016 Audit being conveyed to the Tribe .

42. The Tribe's Single Audit Report for the Fiscal Year Ended September 30, 2017 (hereinafter "2017 Audit") resulted in Ms. Stevens of the BIA (GPR), questioning costs solely from non-BIA funding sources on the grounds that the Tribe had used deferred revenue in the form of advanced federal funds to pay operating expenditures, even though no questioned costs were attached to this Material Weakness Finding and Qualification by the Tribe's auditors, and then incorrectly attaching these questioned costs to an unrelated Audit Finding Number. The Tribe submitted a Corrective Action Plan (CAP) with the 2017 Audit, as usual, but in its Appeal Notice and its 2017 F&D, dated March 20, 2019, the federal awarding official from the BIA (GPR) sustained the questioned costs ordered the issuance of a payment restriction letter.

43. The Tribe appealed the 2017 F&D. In its appeal letter, dated March 27, 2019, the Tribe, once again, argued that the "Tribe's net unrestricted assets and amounts invested in capital assets would be sufficient equity to cover the deferred revenue deficit" and that the "Tribe has assets in the component units that could be liquidated if absolutely

13

necessary, but would not be in the best interest for the Tribe". The Tribe averred that it "has always fulfilled its obligations with all 638 contracts and grants and awards in a timely manner and paid all liabilities incurred in the execution of the contract, award or grant". Referencing the 2016 Audit, the Tribe noted the reduction of the deferred revenue deficit by approximately $2.5 million from FY 2016 to FY 2017. Finally, the Tribe indicated that it was attempting to resolve the deferred revenue deficit issue within three years.

44. The Tribe never received a signed and dated payment restriction letter as was referenced in the 2017 F&D. Nor did the Tribe ever receive a written response to its appeal letter.

45. In late 2020, BIA (GPR), the Tribe's cognizant oversight agency for audit, turned the Tribe's alleged "debt" related to the 2017 Audit and the 2018 Audit over to the United States Department of Treasury, Bureau of the Fiscal Service (USDOT-BFS)

46. The BIA (GPR) did not provide the Tribe with a Request for Bill Collection, rather than the payment restriction letter that was referenced in the 2017 F&D, until April 22, 2021, more than two years after the Tribe's appeal letter, and nearly four months after turning the Tribe's alleged debt over to USDOT-BFS. Even then, the Request for Bill Collection was undated and unsigned.

47. Defendants have been unable to produce documentary evidence that these items relative to the Tribe's 2017 Audit were ever sent via certified mail, or subsequently received by the Tribe, which process is required of the BIA's Awarding Officials (AO's), as per item 3(b) on page three of the Single Audit Handbook 5IAM-2H issued by the Department of the Interior, Bureau of Indian Affairs. As such, there is no documented record of questioned costs for the 2017 Audit being conveyed to the Tribe.

48. The Tribe's Single Audit Report for the Fiscal Year Ended September 30, 2018 (hereinafter "2018 Audit") resulted in Ms. Stevens of the BIA (GPR), questioning costs solely from non-BIA funding sources on the grounds that the Tribe had used deferred revenue in the form of advanced federal funds to pay operating expenditures, even though no questioned costs were attached to this Material Weakness Finding and Qualification by the Tribe's auditors.

49. The Tribe did not receive an Appeal Notice or F&D from the BIA for the 2018 Audit. Later, the BIA produced a F&D, purporting to be dated November 5, 2019, stating that the questioned costs would be sustained and that a bill of collection would be issued.

50. Defendants have been unable to produce documentary evidence that these items were ever sent via certified mail, or subsequently received by the Tribe, which process is required of the BIA's Awarding Officials (AO's), as per item 3(b) on page three of the Single Audit Handbook 5IAM-2H issued by the Department of the Interior, Bureau of Indian Affairs. As such, there is no documented record of questioned costs for the 2018 Audit being conveyed to the Tribe.

51. Had the Tribe received the 2017 Bill for Collection or the 2018 Appeal Notice and F&D, the Tribe would have demonstrated that the 2017 questioned costs of $3,679,223 and the 2018 questioned costs of $3,552,869 were duplicative because both represented the same deferred revenue for the Tribe's Tribally-Controlled School Grant at fiscal year-end.

52. Additionally, as the Tribe never received a written rejection of its appeal letter for FY 2017 or a *Bill for Collection*, the Tribe presumed that its appeal had been accepted and was a sufficient defense of the duplicative finding.

53. Ultimately, the BIA issued a bill for collection for each of the 2017 and 2018 questioned costs, effectively attempting to collect the same alleged debt twice. The Tribe made repeated verbal and written requests, including a letter dated April 22, 2021, from Tribal Chairman Clyde Estes to Ms. Stevens, to have the erroneous collection of the 2017 alleged debt revoked. However, collection commenced despite those requests. In addition, collection of the duplicative findings resulted in the assessment of more than $2,000,000 in administrative costs, interest, and penalties against the Tribe.

54. The Tribe disputed the alleged debt with the Department of Treasury, Bureau of the Fiscal Service, partially on the grounds that the BIA's duplication of questioned costs was resulting in over-collection. The BIA doubled down on its error, insisting that there was no duplication. The Bureau of the Fiscal Service accepted the BIA's explanation and collection continued.

55. Ultimately, the BIA acknowledged its error in duplicating the questioned costs and terminated the collection of the 2018 amounts. However, the BIA did not restore any of the erroneously collected funds. Collection of the 2017 questioned costs continued, even though the only notice received by the Tribe from the BIA did not mention bill collection and stated only that the awarding official would issue a payment restriction.

56. On May 5, 2021, Chairman Estes, sent a letter to Timothy LaPointe of the Great Plains Regional Office of the Bureau of Indian Affairs, pointing out again that "the Tribe's net unrestricted assets and the amounts the Tribe has invested in capital assets would be sufficient equity to cover the Tribes' current deferred revenue deficit." Chairman Estes asked that the BIA cease all further collection actions, and that future funds due to the

Tribe be released, on the grounds that funds were needed to protect Tribal members from the COVID-19 pandemic and provide other essential services.

57. To date, the BIA has refused to discontinue its collections action, and has caused the Department of Treasury, Bureau of Fiscal Service to divert and seize more than $4.35 million in federal funds, including $2.95 million in health service funds earmarked for critical programs such as COVID prevention and response and the Tribe's ambulance service. These funds are needed by the Tribe to provide necessary services for its members, including funds for public safety, public health, and education.

58. The BIA failed to substantially carry out its obligation to provide technical assistance to address the root causes of the audit findings; and offer resolution through a third-party mediation as provided in section 108(b)(12) of the ISDEAA. More specifically, the BIA failed to:

  a. Offer and provide direct technical assistance, and/or third-party technical assistance (see section 103(e) of the Act; 25 U.S.C. §5322(e)), as required by the Act, to address and assist the Tribe resolve the issue(s). Assistance would have included technical services and assistance to develop written internal control procedures and practices, training, etc. to prevent the reoccurrence of deferred revenue situations.

  b. Offer or place the tribe on no less than quarterly allowances until a subsequent financial statement audit shows that the cash discrepancies have been corrected, as provided in the DOI/DIEA Single Audit Report Handbook (5 IAM 2-H). See page 6 of the Handbook.

    c.  Reconcile and identify specific amounts of funds under each affected Bureau program (i.e. Tribally Controlled Schools, Social Services, Road Maintenance, Health & Human Services, Contract Support, etc.); and provide options for addressing and resolving the specific issues.

    d.  Reconcile the amounts of deferred revenues questioned under each audit year by the auditors, some of which may include amounts previously deemed as questioned costs in prior years. This failure resulted in a duplication of questioned (and later) disallowed costs and arbitrary withdrawal of significant amount of funds by the U.S. Treasury which included federal appropriations provided to the Tribe for carrying out services to its members under its federal awards.

    e.  Address and avoid potential impacts on the affected programs before issuing Bills for Collection, prompting the U.S. Treasury's unilateral and arbitrary taking ("sweep") of funds from the affected programs and other critical federal programs.

59. The Defendants' conduct constitutes an unlawful seizure of federal funds to satisfy an alleged federal debt and compromised the effective delivery of services to which Tribal members are entitled pursuant to federal law, including services mandated by the Snyder Act of 1921.

60. The unilateral taking of funds adversely impacts the ability of the Tribe to perform and deliver services under its federal awards, such as (a) education programs (K-12) under the Tribally Controlled Schools Act grants, (b) eliminating funds intended for vaccinations and other services during the national coronavirus pandemic public emergency under its

Pub. L. 93-638 contract with the Department of Health & Services, (c) adverse impact on the Tribe's ability to deliver services under its federal contract and grant awards.

61. The BIA's failures have compromised the Tribe's ability to comply with the terms and conditions for delivery of services under its federal awards; and may eventually result in the termination of grant awards by federal awarding agencies; and reassumption of programs awarded under Pub. L. 93-638 by the Department of Interior / Bureau of Indian Affairs and Department of Health and Human Services / Indian Health Service for non-compliance.

62. In diverting and seizing federal funds in order to satisfy the Tribe's alleged federal debt, Defendants have prevented the Tribe from using those federal funds for their intended purpose, and the use of federal funds to pay a federal debt is itself a disallowed costs created by Defendants.

63. The Defendants actions have brough the Tribe dangerously close to insolvency, in violation of Defendants' trust duty to the Tribe.

COUNT 1<br>
Detrimental Reliance<br>
Declaratory Judgment and Injunctive Relief

64. The Tribe realleges the preceding paragraphs and incorporates them by reference

65. In response to the auditor's questioning of the Tribe's use of deferred revenue in the fiscal years 2012, 2013, 2014, and 2015 audits, the Tribe notified the cognizant oversight agency for audit, *to wit*, the BIA, that its equity in capital assets and other equity were sufficient to offset the deferred revenue.

66. In each of those fiscal years, the BIA accepted the Tribe's response, reinstated the questioned costs (except for BIA-issued funds for the 2013 Audit), and declined to issue a bill of collection.

67. The Tribe reasonably relied upon the BIA's acceptance of its response, and in subsequent fiscal years, continued to utilize deferred revenue obtained from its federal grants for operating expenses on the grounds that the amounts were offset by the value of the Tribe's capital assets.

68. The Tribe's reasonable reliance on the BIA's custom, practice, policy, and/or conduct in accepting the Tribe's responses resulted in irreparable harm and hardship to the Tribe and its members when the BIA reversed its previous practice and, with the assistance of the Department of Treasury, Bureau for the Fiscal Service, seized federal funds intended for the Tribe's necessary expenses.

69. There is a substantial controversy between the Tribe and Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

70. The Tribe is also entitled to a preliminary and permanent injunction requiring Defendants to halt the collection action in place and restore federal funds already seized so that the Tribe can utilize the funds for purposes necessary for the general welfare of the Tribe and its members.

## COUNT 2
### Declaratory Judgment and Injunctive Relief

71. The Tribe realleges the preceding paragraphs and incorporates them by reference.

72. The ISDEAA governs the appropriate response of the Tribe's cognizant oversight agency for audit, *to wit*, the BIA, to questioned costs

73. There is a substantial controversy between the Tribe and Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that the BIA violated the ISDEAA by failing to comply with the ISDEAA in its response to questioned costs in the Tribe's audit and resorting to a collection action.

74. The Tribe is also entitled to a preliminary and permanent injunction requiring Defendants to halt the collection action in place and restore federal funds already seized so that the Tribe can utilize the funds for purposes necessary for the general welfare of the Tribe and its members.

COUNT 4
Violation of Treaty, Statutory, and Common Law Trust Duty:
Declaratory Judgment and Mandatory Injunction

75. The Tribe realleges the preceding paragraphs and incorporates them by reference.

76. The federal government has a trust duty, pursuant to the Snyder Act of 1921, the ISDEAA, the Treaty of Fort Laramie, and federal common law, to provide services and necessary federal funding to the Tribe and its members.

77. By failing to fulfill its obligations to the Tribe under the ISDEAA, the cognizant oversight agency for audit, *to wit*, the BIA, violated its trust duty to the Tribe.

78. The Tribe is entitled to a declaratory judgment that the BIA violated its trust duty owed to the Tribe arising under the Treaty of Fort Laramie, the Snyder Act, the ISDEAA, and federal common law, to promote and support Tribal self-government and provide federal funding for services necessary to the Tribe and its people.

79. The Tribe is also entitled to a mandatory injunction requiring Defendants to halt the collection action in place and restore federal funds already seized so that the Tribe can

utilize the funds for purposes necessary for the general welfare of the Tribe and its members.

COUNT 5

Violation of the Administrative Procedures Act, 5 U.S.C. § 702 *et. seq.*
Declaratory Judgment and Injunctive Relief

80. The Tribe realleges the preceding paragraphs and incorporates them by reference.

81. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof." 5 U.S.C. § 702.

82. The BIA, as the Tribe's cognizant oversight agency for audit, violated the ISDEAA, as well as its special trust duty as described *supra*.

83. The Tribe is entitled to a declaratory judgment that the BIA violated its trust duty owed to the Tribe arising under the Treaty of Fort Laramie, the Snyder Act, the ISDEAA, and federal common law, to promote and support Tribal self-government and provide federal funding for services necessary to the Tribe and its people.

84. The Tribe is also entitled to a mandatory injunction requiring Defendants to halt the collection action in place and restore federal funds already seized so that the Tribe can utilize the funds for purposes necessary for the general welfare of the Tribe and its members.

COUNT 5

Violation of Equal Protection and Due Process Under the United States Constitution
Declaratory Judgment and Mandatory Injunction

85. The Tribe realleges the preceding paragraphs and incorporates them by reference.

22

86. As the Tribe represents the interests of all of its members, and is empowered to pursue claims that affect all of its members, the Tribe has *parens patriae* ("parent of the country") standing to bring constitutional claims.

87. Defendants have violated, and continue to violate, the equal protection and due process rights of the Tribe and its members by taking a valuable right without notice and hearing.

88. The Tribe has a constitutionally protected property interest in the federal funds provided to the Tribe by the BIA pursuant to the ISDEAA and the parties' 638 contracts, as well as by the BIE pursuant to the TCSA and the grants awarded.

89. The Defendants' collection, seizure, or diversion of these federal funds deprives the Tribe and its members of the services to which they are entitled under the United States' trust responsibility, federal law, and the Constitution.

90. There is no rational basis or justification for the Defendants to collect, seize, or divert these federal funds in order to satisfy an alleged federal debt, or for the Defendants to interrupt or prevent the Tribe from rendering necessary services to its members, particularly when the BIA, as the Tribe's cognizant oversight agency for audit, had a duty to seek a resolution short of collection.

91. The collection, seizure, or diversion of these federal funds without a rational basis violates their right to receive due process and equal protection under law.

92. Due process requires that the United States provide healthcare and medical care to members of the Tribe for which they are entitled. Courts have repeatedly recognized substantive due process claims where prisoners or civil committees —for whom the federal government is directly responsible for health care — allege that medical care has fallen below the constitutionally-prescribed level. See, e.g., Butler v. Fletcher, 465 F.3d

20 Case 3:16-cv-03038-RAL Document 1 Filed 04/28/16 Page 20 of 23 PageID #: 20

340, 345 (8th Cir. 2006) (noting that "[p]retrial detainees and convicted inmates, like all

persons in custody have the same right to these basic human needs," including medical

care, under the Due Process Clause); Frost v. Agnos, 152 F.3d 1124,1131 (9th Cir. 1998)

(reversing summary judgment on Section 1983 claim alleging that the county violated

pre-trial detainee's substantive due process rights by failing to provide him with

accessible shower facilities).

93. The Defendant's collection, seizure, or diversion of federal funds to which the Tribe is

entitled endangers and poses risk of harm to members of the Tribe, in violation of the

Equal Protection Clause and Due Process Clause.

94. The Tribe is entitled to a declaratory judgment that the Defendants' actions violate the

Equal Protection Clause and Due Process Clause rights of the Tribe members.

95. The Tribe is also entitled to a mandatory injunction requiring Defendants to halt the

collection action in place and restore federal funds already seized so that the Tribe can

utilize the funds for purposes necessary for the general welfare of the Tribe and its

members.

96. Furthermore, the injunction should require Defendants to administer their responsibilities

under the ISDEAA in a manner that complies with the Equal Protection Clause and Due

Process Clause rights of the Tribe members.

WHEREFORE, The Tribe respectfully prays for relief and damages against the Defendant

as follows:

1. A declaratory judgment stating that the BIA, as the Tribe's cognizant oversight agency for audit, violated the Indian Self-Determination and Education Assistance Act by:

   a. Failing to offer or provide direct technical assistance, and/or third-party technical assistance as required by the Act, to address and assist the Tribe in resolving disallowed costs.

   b. Failing to offer or place the Tribe on no less than quarterly allowances until a subsequent financial statement audit shows that all discrepancies have been corrected.

   c. Failing to reconcile and identify by CFDA Number specific amounts of funds under each affected federal program - including Department of the Interior programs (Bureau of Indian Affairs' programs and Bureau of Indian Education programs) and Department of Education programs - and provide options for addressing and resolving the specific issues.

   d. Failing to reconcile by CFDA Number the amounts of deferred revenue questioned under each audit year by the auditors, including any amounts previously deemed as questioned costs in prior years, thereby resulting in duplication of questioned, (and later) disallowed costs, and arbitrary collection / diversion of a significant amount of funds by the U. S. Treasury.

   e. Ordering the collection of federal appropriations provided to the Tribe for carrying out services to its members in order to satisfy a federal debt.

2. An injunction that preliminarily and permanently enjoins the Defendants from any further collection actions and requires the Defendants to restore federal funds

already diverted from the Tribe so that the Tribe may use them for their intended purpose.

3. For The Tribe's costs and disbursements, without limitation, including attorney's fees under the Equal Access to Justice Act , 28 U.S.C. § 2412 and other applicable statutes, and as permitted by general principles of law and equity.

4. For such other and further relief as the Court determines to be just and proper under the circumstances.

Dated this 5th day of October, 2021.

**HEIDEPRIEM, PURTELL,**
**SIEGEL & HINRICHS, L.L.P.**

B*y John R. Hinrichs*
John R. Hinrichs (SD Bar No. 3166)
101 West 69th Street, Suite 105
Sioux Falls, SD 57108
Tel:    (605) 679-4470
Fax:    (605) 679-4379
Email: john@hpslawfirm.com

*Attorney for the Lower Brule Sioux Tribe*

26

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

LOWER BRULE SIOUX TRIBE

## DEFENDANTS

Hon. Deb Haaland, United States Department of Interior, Bryan Newland, Darryl Lacounte, United States Bureau of Indian Affairs, Krissanne Stevens, United States Department of the Treasury, Bureau

**(b)** County of Residence of First Listed Plaintiff    Lyman
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
John R. Hinrichs
Heidepriem, Purtell, Siegel & Hinrichs, LLP
101 West 69th Street, Suite 105, Sioux Falls, SD 57108

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 2   U.S. Government Defendant
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 2201 Fed. R. Civ. P. 65, 28 U. S. C. 1361
Brief description of cause:
Injunctive relief

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE                                       DOCKET NUMBER

DATE   10/8/21

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE