UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| LOWER BRULE SIOUX TRIBE, A FEDERALLY RECOGNIZED INDIAN TRIBE;<br><br>Plaintiff,<br><br>vs.<br><br>HON. DEB HAALAND, SECRETARY, UNITED STATES DEPARTMENT OF THE INTERIOR, OR HER SUCCESSOR IN OFFICE; UNITED STATES DEPARTMENT OF INTERIOR, BRYAN NEWLAND, ACTING ASSISTANT SECRETARY OF THE INTERIOR FOR INDIAN AFFAIRS, OR HIS SUCCESSOR IN THE OFFICE; DARRYL LACOUNTE, DIRECTOR OF THE BUREAU OF INDIAN AFFAIRS; UNITED STATES BUREAU OF INDIAN AFFAIRS, KRISSANNE STEVENS, OR HER SUCCESSOR, AWARDING OFFICIAL FOR THE BUREAU OF INDIAN AFFAIRS GREAT PLAINS REGION; AND THE UNITED STATES OF AMERICA,<br><br>Defendants. | 3:21-CV-03018-RAL<br><br>OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT |

I.   **Procedural History**

Plaintiff Lower Brule Sioux Tribe ("the Tribe") entered self-determination contracts under the Tribally Controlled Schools Act of 1988 ("TCSA"), Pub. L. No. 100-297, 102 Stat. 130 (codified as amended in 25 U.S.C. §§ 2501–11), with the federal government, under which the Tribe received federal funds to operate tribal schools that otherwise would have been operated by the federal government. Doc. 1 at 1–2; Doc. 32 at 1–2. The Tribe used monies received under the

1

TCSA to fund tribal government operations other than schools, creating an "unearned revenue deficit," ultimately prompting the government to collect the deficit through offsets from monies the Tribe otherwise would have received. Doc. 1 at 9–24; Doc. 32 at 7–15. The Tribe filed its original complaint on October 8, 2021, against the Bureau of Indian Affairs ("BIA"), the Department of Interior ("DOI"), and its representatives Deb Haaland, Bryan Newland, Darryl LaCounte, and Krissane Stevens (collectively "Defendants"), seeking to enjoin Defendants from collecting debt incurred by the Tribe and requesting entry of a declaratory judgment relief. Doc. 1. The Tribe's original complaint appeared to have five claims: (1) disputing the BIA's findings of "unearned revenue deficits"; (2) alleging a failure of Defendants to provide technical assistance; (3) detrimental reliance; (4) breach of trust; and (5) violation of due process and equal protection. Doc. 1; see Doc. 27 at 15. Defendants filed a motion to dismiss. Doc. 9.

While not explicit in the original complaint, the Tribe also claimed that Defendants had collected more than the total unearned-revenue balance. For reasons explained at length, this Court on September 12, 2022, granted in large part the Defendants' motion to dismiss the original complaint but allowed the Tribe to seek leave "to file an amended complaint . . . regarding alleged over-collection." Doc. 27 at 29. The main reason for dismissing the bulk of the Tribe's claims was that its original complaint was filed more than a year after receipt of many of the contracting officer's decisions being challenged, such that the sovereign immunity waiver under 25 U.S.C. § 5331(a) and 41 U.S.C. § 7104(b)(3) would not extend.

The Tribe obtained leave to and filed its Amended Complaint, Doc. 32, which substituted a single claim for the previous five claims. Some of the factual allegations in the Amended Complaint duplicate assertions in the original complaint, which prompted Defendants to file a motion to dismiss the Amended Complaint. See Doc. 37. Because there is enough alleged in the

2

Amended Complaint to plead a single claim concerning whether the federal government has overcollected and what amount remains to be repaid, if any, by the Tribe for the unearned-revenue balance, this Court denies Defendants' Motion to Dismiss Amended Complaint.

**II.   Legal Standard**

Defendants bring their motion to dismiss the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Docs. 37, 38. On a motion to dismiss under Rule 12(b)(1), the standard of review depends on whether the defendant is making a facial attack or factual attack on subject matter jurisdiction. Stalley v. Cath. Health Initiatives, 509 F.3d 517, 520–21 (8th Cir. 2007). When a defendant makes a facial attack to challenge whether the facts alleged in the complaint establish subject matter jurisdiction under Rule 12(b)(1), the plaintiff is afforded similar safeguards as in a Rule 12(b)(6) motion. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Namely, the Court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. Stalley, 509 F.3d at 521 (citations omitted). A court's review then is limited to the face of the pleadings. Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914 (8th Cir. 2015).

On the other hand, when a defendant attacks the factual basis for subject matter jurisdiction, a court can consider matters outside the pleadings, "and the non-moving party does not have the benefit of 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6. "A factual attack occurs when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction." Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (cleaned up and citation omitted). Under a factual attack, "no presumptive truthfulness attaches to the plaintiff's allegations," and a "court is free to

weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn, 918 F.2d at 730 (citation omitted). Defendants consider their motion to dismiss to be a facial attack or alternatively, an attack for failure to state a claim under Rule 12(b)(6). Doc. 38 at 11 n.12. Therefore, this Court reviews Defendants' motion to dismiss as a facial attack and affords the Tribe the benefit of Rule 12(b)(6) safeguards.

Defendants also filed a Declaration of Lynn Stapor, the BIA's Director of Accounting Operations Indian Affairs, whose declaration recounts that Defendants refunded to the Tribe $671,794.92 collected from the Fiscal Year 2018 debt and applied that amount to the Fiscal Year 2017 debt, and separately refunded Indian Health Services ("IHS") Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") funds that Defendants previously had offset from the debt. Doc. 39 at 1–2. According to Stapor's Declaration, the Tribe nevertheless still has a debt obligation of $1,013,873.36, though Defendants have suspended further offsets and collection during the pendency of this case. Id. at 2–3. If this is true, the Tribe's claim appears to be mistaken and perhaps subject to summary judgment. But because this Court is considering a motion to dismiss (and not one for summary judgment), this Court "accept[s] as true all factual allegations in the complaint" to determine if plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. Stalley, 509 F.3d at 521.

### III. Subject Matter Jurisdiction in Self-Determination Contract Context

The Tribe's claim arises out of its treatment of funds received under the TCSA, one of its self-determination contracts. Several statutes govern the Defendants' waiver of sovereign immunity, the grant of jurisdiction to federal district courts, and in turn the ability of the tribe to sue the federal government and challenge its decision-making in the administration of self-determination contracts.

Congress passed the Indian Self-Determination and Education Assistance Act ("ISDEAA"), Pub. L. No. 93-638, 88 Stat. 2203 (codified as amended in 25 U.S.C. §§ 5301–10, 5321-32), in 1975 to allow Indian tribes to assume control of federally administered educational and social programs. 25 U.S.C. § 5302; Ramah Navajo Chapter v. Lujan, 112 F.3d 1455, 1456 (10th Cir. 1997), superseded by statute, 25 U.S.C. § 5326, as recognized in San Carlos Apache Tribe v. Becerra, 53 F.4th 1236 (9th Cir. 2022); see also Stathis v. Marty Indian Sch. Bd. Inc., 560 F. Supp. 3d 1283, 1298 (D.S.D. 2021) ("Congress has made clear that having Native American communities and tribes control the education of their children promotes [tribal self-determination and cultural autonomy]."). "Congress enacted the ISDEAA to encourage Indian self-determination and tribal control over administration of federal programs for the benefit of Indians, by authorizing self-determination contracts between the United States, through the Secretaries of the Interior and of Health and Human Services, and Indian tribes." Demontiney v. United States ex rel. Dep't of Interior, Bureau of Indian Affs., 255 F.3d 801, 806 (9th Cir. 2001) (citation omitted). Pursuant to these contracts, "Secretaries [of the Interior and of Health and Human Services] are required to transfer resources and control of those programs to the tribe." Ramah Navajo Chapter, 112 F.3d at 1456.

"In 1988, Congress amended the ISDEAA to waive federal sovereign immunity in federal district court for certain contract claims" brought by tribes under the statute. Demontiney, 255 F.3d at 806. The amendment language provides:

> The United States district courts shall have original jurisdiction *over any civil action or claim against the appropriate Secretary arising under this chapter and, subject to the provisions of [25 U.S.C. § 5331(d)] and concurrent with the United States Court of Claims, over any civil action or claim against the Secretary for money damages arising under contracts authorized by this chapter*. In an action brought under this paragraph, the district courts may order appropriate relief including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this chapter or regulations

5

> promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this chapter or regulations promulgated hereunder (including immediate injunctive relief to reverse a declination finding under section 5321(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract).

25 U.S.C. § 5331(a) (emphasis added). In turn, § 5331(d) incorporates the Contract Disputes Act ("CDA"), Pub. L. No. 95-563, 92 Stat. 2383 (codified as amended in 41 U.S.C. §§ 7101–7109), to claims brought under the ISDEAA. See 25 U.S.C. § 5331(d) (stating "Chapter 71 of Title 41 shall apply to self-determination contracts" brought under this chapter). In short, both the ISDEAA and the CDA govern disputes between the federal government and a tribe arising under the ISDEAA. See Swinomish Indian Tribal Cmty. v. Azar, 406 F. Supp. 3d 18, 24 (D.D.C. 2019) (holding the CDA and ISDEAA gave a federal district court subject matter jurisdiction over a claim brought by a tribe against the federal government arising from a self-determination contract).

Like the ISDEAA, "the CDA is a statute waiving sovereign immunity." M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1329 (Fed. Cir. 2010) (citation omitted). The CDA governs disputes arising from an express or implied contract between an executive agency of the federal government and the contracting party. 41 U.S.C. § 7102. "Congress enacted the CDA [in 1978] to provide a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving government contract claims." Montano Elec. Contractor v. United States, 114 Fed. Cl. 675, 680 (2014) (cleaned up and citation omitted). In relevant part, the CDA provides different ways for appealing a federal agency's decision concerning a contracting party, such as a tribal recipient of a self-determination contract:

> (a) Appeal to agency board.--A contractor, within 90 days from the date of receipt of a contracting officer's decision under section 7103 of this title, may appeal the decision to an agency board as provided in section 7105 of this title [to the Civilian Board of Contract Appeals ("CBCA")].
>
> (b) Bringing an action de novo in Federal Court.--

6

> (1) In general. . . . in lieu of appealing the decision of a contracting officer under section 7103 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary. . . .
>
> . . . .
>
> (3) Time for filing.--A contractor shall file any action under paragraph (1) . . . *within 12 months from the date of receipt of a contracting officer's decision under section 7103 of this title.*

41 U.S.C. § 7104 (a)–(b) (emphasis added). Because the ISDEAA incorporates the CDA, a federal district court has concurrent jurisdiction with the United States Court of Federal Claims over a claim arising under the ISDEAA that was filed "within 12 months from the date of receipt of a contracting officer's decision." 41 U.S.C. § 7104(b)(3); see also Demontiney, 255 F.3d at 806 (holding that § 5331(a), (d) of the ISDEAA grant a federal "district court concurrent jurisdiction [with the U.S. Court of Federal Claims] over suits against the federal government for contract claims arising under 'self-determination contracts' as defined by the ISDEAA").

The Code of Federal Regulations summarizes a tribal grant recipient's appeal rights succinctly: "You may appeal [a final] decision [under the ISDEAA] to the Civilian Board of Contract Appeals (CBCA) . . . within 90 days from the date you receive [the final] decision. . . . Instead of appealing to the CBCA, you may bring an action in the U.S. Court of Federal Claims or in the United States District Court *within 12 months of the date you receive*" notice of the final decision. 25 C.F.R. § 900.222 (emphasis added). An appeal must be timely commenced under the CDA as incorporated by the ISDEAA, otherwise a "contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency, unless an appeal or action is timely commenced as authorized by this chapter." 41 U.S.C. § 7103(g).

7

In 1988, the same year the ISDEAA was amended to incorporate the CDA, Congress enacted the TCSA, which "requires the Secretary of the Interior to award grants to Indian tribes or tribal organizations to operate schools on their reservations if requested by a tribe." Shiprock Associated Sch., Inc. v. United States, 934 F. Supp. 2d 1311, 1313 (D.N.M. 2013); 25 U.S.C. § 2501. Like the ISDEAA, the TCSA was enacted "to assure maximum Indian participation in the direction of educational services." 25 U.S.C. § 2501; Stathis, 560 F. Supp. 3d at 1298 (citation omitted). A tribal grant recipient under the TCSA is authorized to use federal funds to operate tribal schools in compliance with the provisions of the statute. 25 U.S.C. § 2502.

When granting in large part the Defendants' motion to dismiss the original complaint, this Court observed that the Tribe was challenging decisions rendered more than one year before the complaint's filing on October 8, 2021. Doc. 27 at 15–19. After all, to bring an action under the TCSA, ISDEAA, and CDA in federal district court, a contractor, like the Tribe, must file "within 12 months from the date of receipt of the contracting officer's decision . . . ." 41 U.S.C. § 7104(b)(3). This Court concluded its discussion of why many of the Tribe's claims were time-barred and thus not within the United States' waiver of sovereign immunity by noting "[n]othing in this opinion and order should be read to foreclose amendment of the complaint to state a claim regarding such things as excess administrative costs and overcollection of amounts owed, and the twelve-month limitation period may not bar such claims." Doc. 27 at 18–19. This Court now considers whether the Amended Complaint states such a claim.

### IV.  Allegations of Amended Complaint Asserting Viable Claim

The Tribe's Amended Complaint contains contentions relating to Defendants' actions and the Tribe's unearned-revenue deficit pre-dating October 8, 2020, one year before the original complaint. Because 41 U.S.C. § 7104(b)(3) renders those actions and decisions outside of the time

for judicial review, this Court takes those allegations as background and explanation of how the Tribe accrued its unearned-revenue deficit.

The Tribe alleges that in December of 2020, the BIA issued a bill of collection for two separate fiscal year debts to the Department of Treasury, Bureau of the Fiscal Service, that effectively attempted to collect the same debt twice. Doc. 32 at ¶ 44. The Tribe claims that the apex of its unearned-revenue balance was $6,122,556 as of September of 2016 and that amount had declined to $1,981,756 as of September of 2020, and that issuing bills of collection for two fiscal years in December 2020 overlooked both the decline in the balance and the rollover from year to year of the debt. Id. at ¶¶ 43–44. The Tribe made requests, including through a letter from its Tribal Chairman dated April 22, 2021, to have the duplicate collection withdrawn, but the BIA allegedly "doubled down on its error." Id. at ¶¶ 46, 48. The Tribe also alleges that administrative costs, interest, and penalties wrongfully accrued due to "collection on duplicative findings." Id. at ¶ 47. The Tribe contrasts what Defendants believe the Tribe still owes—$1,013,873.36—with what the Tribe believes the BIA has over collected on the "deferred revenue deficit balance."[1] Id. at ¶¶ 52–53. The Tribe also contends that the earliest it received notice of the presumably duplicative bill of collection was April 2021. Id. at ¶ 61. While the Tribe's single cause of action

---

[1] The Amended Complaint alleges overcollection of $1,124,088. Id. at ¶ 52. At the motion hearing on April 19, 2024, the Tribe's attorney said the figure might be closer to $700,000. Back when this Court was ruling on the motion to dismiss the original complaint, the Tribe's attorney asserted overcollection of $486,000. See Doc. 27 at 18. The parties should be able to sort out quickly during discovery whether there was any overcollection or whether the Tribe must still endure further offsets. This Court accommodated multiple requests to defer a hearing and ruling on the motion to dismiss the Amended Complaint, such that the hearing occurred more than a year after the motion was filed, ostensibly because the parties were discussing a possible resolution. This Court expects the parties to proceed diligently from here to conduct whatever limited discovery is necessary and then to resolve the case (whether by themselves or with the help of a magistrate judge) or to set it for trial.

is no model of clarity, see id. at ¶¶ 58–66, it does incorporate all allegations from throughout the Amended Complaint, id. at ¶ 58.

The Tribe's Amended Complaint challenges decisions made by Defendant's within the 12 months preceding its original complaint being filed. The allegations of the Amended Complaint relate back to the filing of the original complaint under Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure because "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Crim. P. 15(c)(1)(B). Thus, the narrow claim in the Amended Complaint—alleging overcollection due to final decisions made on or after October 8, 2020, and in turn including a request for declaratory judgment of what amount the BIA owes to the Tribe, or what amount the Tribe owes back to the United States—survives Defendants' motion to dismiss. All other claims from the original complaint remain foreclosed and outside of the waiver of sovereign immunity and in turn this Court's jurisdiction.

V. **Conclusion and Order**

For the reasons explained herein, it is

ORDERED that Defendants' Motion to Dismiss Amended Complaint, Doc. 37, is denied.

DATED this 24th day of April, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE